Brian W. LaCorte (012237)
Donna H. Catalfio (021827)
Ivan J. Mlachak (021939)
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
E-mail: bwl@gknet.com; dhc@gknet.com; ijm@gknet.com
Attorneys for Plaintiffs/Counter-defendants
   GolfSwitch, Inc. and Spectrum Golf, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| GolfSwitch, Inc., et al., <br><br> Plaintiffs/Counter-defendants, <br><br> v. <br><br> Incuborn Solutions, Inc., et al., <br><br> Defendants/Counter-claimants. | No.  CV06-1119-PHX-NVW <br>      CV06-1406-PHX-NVW <br>      (CONSOLIDATED) <br><br> **RENEWED MOTION TO RE-OPEN FACT DISCOVERY ON NARROW ISSUE REGARDING COMCAST ACQUISITION OF INCUBORN-RELATED DEFENDANTS** |
| GolfSwitch, Inc., <br><br> Plaintiff/Counter-defendant, <br><br> v. <br><br> TeeConnect, LLC, et al., <br><br> Defendants/Counter-claimants. | **(Expedited Ruling Requested)** <br><br> **(Assigned to the Hon. Neil V. Wake)** |

Pursuant to Fed. R. Civ. P. Rule 16(b), Plaintiffs/Counter-defendants GolfSwitch, Inc. and Spectrum Golf, Inc. (collectively "GolfSwitch") hereby renew their Motion to Re-open Fact Discovery to allow GolfSwitch to obtain three discrete categories of documents related to Comcast Corporation's post-discovery cut-off purchase of the Incuborn-related Defendants ("Cypress"): (1) the purchase agreement (with attachments),

(2) business plans and analysis, market analysis and competitive analysis performed by Comcast in connection with the purchase, and (3) projections received or prepared by Comcast in connection with the purchase.[1]

## I.     INTRODUCTION AND BACKGROUND.

Pursuant to Paragraph 4(c) of the Case Management Order (Doc. #56), fact discovery closed on January 30, 2008. Following the close of discovery, and shortly before the parties' mediation on March 31, 2008, GolfSwitch began hearing rumors that Comcast Corporation ("Comcast") was in the process of purchasing Cypress for approximately $40 million. Affidavit of Brian W. LaCorte ("LaCorte Aff.") at ¶ 2 (attached as Exhibit A hereto). Shortly before the scheduled mediation, Cypress' counsel contacted GolfSwitch's counsel and stated that Comcast was doing a deal with Cypress, but the deal had not yet closed. However, given the expected closing of the purchase, Cypress was joined by Comcast representatives at the mediation. *Id.* at ¶ 3. Unfortunately, the mediation on March 31, 2008 proved unsuccessful. *Id.* at ¶ 4.

Shortly after the mediation, GolfSwitch's counsel asked Cypress' counsel if Cypress would produce the Comcast purchase agreement and/or information related to the Comcast transaction, indicating that GolfSwitch believed this information would be relevant to its damages analysis and fell within the scope of GolfSwitch's earlier document requests. *Id.* at ¶ 5. After considering this request, Cypress declined to

---

[1] Out of an abundance of caution, GolfSwitch filed its original motion under seal. Now, however, GolfSwitch has seen several published reports reflecting that Comcast Corporation is rumored to have purchased Cypress for approximately $40 million. Thus, the present motion has not been filed under seal.

1  produce this information.  *Id.* at ¶ 6.  In a subsequent telephone conversation with

2  Cypress' counsel, GolfSwitch's counsel confirmed that Cypress would not be producing

3  any sale-related information.  *Id.* at ¶ 7.

4        Accordingly, on April 25, 2008, GolfSwitch filed a Motion to Re-Open Fact

5  Discovery on Narrow Issue Regarding Comcast Acquisition of Incuborn-Related

6  Defendants (the "Original Motion") (Doc. # 180).  As noted above, GolfSwitch

7  personally consulted Cypress before filing the Original Motion and confirmed that

8  Cypress would not produce any information related to the Comcast transaction.

9  However, in filing the Original Motion, GolfSwitch inadvertently failed to submit a

10  certification under L.R. Civ. 7.2(j) verifying this consultation.  Cypress filed a response

11  to the Original Motion, Doc. # 186 (the "Original Response").  On May 14, 2008, the

12  Court issued an Order noting that the Original Motion did not comply with the procedure

13  set out in the Case Management Order for raising discovery disputes, and it did not

14  include the certification required under L.R. Civ. 7.2(j).  Accordingly, the Court denied

15  the Original Motion "without prejudice to refiling in the event that the parties [were]

16  unable to resolve the issue after personal consultation and sincere efforts to do so." (Doc.

17  #189 at p. 2).

18        While the parties did confer before filing the Original Motion, the Court's point

19  was well taken, and shortly after the Court's May 14, 2008 Order, the parties engaged in

20  additional conversations to attempt to resolve the issue presented by the motion.

21  GolfSwitch attempted to reach a compromise by identifying for Cypress the specific

22  documents it wanted, including examples, and by narrowing the categories of documents

requested. LaCorte Aff. at ¶ 10. GolfSwitch's counsel memorialized its compromise in a May 19, 2008 letter to Cypress' counsel. See Letter from Brian W. LaCorte to Brett L. Dunkelman and Johnathan E. Mansfield (May 19, 2008) (attached as Exhibit B hereto).

During the same time period, the parties continued discussions to settle this case. Specifically, Comcast and GolfSwitch were engaged in discussions regarding Comcast's possible purchase of GolfSwitch. LaCorte Aff. at ¶ 12. GolfSwitch understood from Comcast that any further efforts to obtain information related to the purchase of Cypress would quickly derail these discussions. Id. at ¶ 13. To allow meaningful negotiations between Comcast and GolfSwitch to proceed, GolfSwitch agreed to table the issue and engaged in settlement/buy-sell negotiations for several weeks with Comcast. Unfortunately, the parties were unable to reach an agreement. Id. at ¶ 14. After these negotiations ended, GolfSwitch and Cypress made further efforts to resolve the case through a direct lump-sum settlement, rather than a purchase/sale involving Comcast. Again, however, these discussions were unsuccessful. Id. at ¶¶ 15-16.

Once these settlement avenues were exhausted, GolfSwitch's counsel promptly e-mailed Cypress' counsel on September 1, 2008, requesting production of sale-related documents under the more narrow approach proposed earlier by GolfSwitch to Cypress. Id. at ¶ 17; September 1, 2008 e-mail from Brian LaCorte to Brett Dunkelman (attached as Exhibit C hereto). Cypress' counsel responded by letter dated September 2, 2008, indicating that documents in three of the categories contained in the May 19, 2008 letter did not exist, and that Cypress would decline to produce documents in the three

1  remaining categories.  *Id.* at ¶ 18; Letter from Brett L. Dunkelman to Brian W. LaCorte
2  (September 2, 2008) (attached as Exhibit D hereto).
3      Having exhausted all possible settlement avenues that would make this issue moot,
4  and having exhaustively consulted with Cypress in an attempt to reach a compromise on
5  production of the requested documents, GolfSwitch seeks the Court's aid in obtaining
6  this highly relevant and otherwise unobtainable information from Cypress.  The
7  discovery sought by this renewed motion is very narrow – GolfSwitch seeks only the
8  three categories of documents listed in its May 19, 2008 letter that Cypress admits exist,
9  but refuses to produce.  These are: (1) the purchase agreement (with attachments), (2)
10 business plans and analysis, market analysis and competitive analysis performed by
11 Comcast in connection with the purchase, and (3) projections received or prepared by
12 Comcast in connection with the purchase.  By its renewed motion, GolfSwitch seeks no
13 other documents or discovery on this or any other issue.

14 **II.    <u>GOOD CAUSE TO REOPEN DISCOVERY EXISTS HERE.</u>**

15     GolfSwitch is asking the Court to modify its scheduling order for the narrow
16 purpose of ordering Cypress to provide a limited number of documents in three discrete
17 categories.  A scheduling order may be modified "for good cause and with the judge's
18 consent."  Fed. R. Civ. P. Rule 16(b).  The Ninth Circuit has held that a showing of "good
19 cause" under Rule 16(b) focuses on "the reasonable diligence of the moving party."
20 *Noyes v. Kelly Services,* 488 F.3d 1163, 1174 (9th Cir. 2007) (*citing Johnson v.*
21 *Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992)).  Under Rule 16(b), the
22 good cause standard should be "liberally construed."  *Export-Import Bank of the United*

1  *States v. Asia Pulp & Paper Co.,* 233 F.R.D. 338, 342 (S.D.N.Y. 2005) (granting motion

2  to extend discovery deadline in order to allow moving party to issue a subpoena to

3  depose a newly discovered witness).  Where a court denies a motion to extend discovery

4  deadlines even upon a showing of good cause and reasonable diligence of the moving

5  party, such denial constitutes an abuse of discretion.  *Noyes,* 488 F.3d at 1174.

6       The inquiry into "good cause" focuses on the reasonable diligence of the moving

7  party, GolfSwitch.  *Noyes,* 488 F.3d at 1174; *Padilla v. Bechtel Constr. Co.,* 2007 WL

8  625927 at *6 (D. Ariz. Feb. 27, 2007).  As demonstrated above, GolfSwitch did not learn

9  of Comcast's purchase of Cypress, and, in fact, the sale did not close, until well after the

10 fact discovery deadline.  As such, GolfSwitch could not have requested the documents at

11 issue before the discovery deadline.

12      Promptly after learning of the impending sale, GolfSwitch requested documents

13 and information related to the sale, noting that it believed this information fell within the

14 scope of its outstanding discovery requests, discovery requests Cypress had a continuing

15 duty to supplement pursuant to Fed. R. Civ. P. 26(e).  When Cypress refused, GolfSwitch

16 filed its Original Motion.  After denial of the Original Motion, GolfSwitch tabled the

17 issue to permit discussions regarding a compromise of the case.  It is important to note

18 that had GolfSwitch continued to push the issue of production of these documents,

19 purchase negotiations between Comcast and GolfSwitch would have come to an abrupt

20 halt, thereby excluding a possible avenue of settlement.  When settlement discussions

21 ultimately failed, GolfSwitch promptly filed its renewed motion.  Accordingly,

22 GolfSwitch did not delay in requesting production of what is clearly new, post discovery

cut-off information. *See Noyes,* 488 F.3d at 1174; *Hall v. Manschot,* 2007 WL 1100332 at *1 (D. Ariz. April 11, 2007) (where the request for modification of a scheduling order is based upon newly discovered information, good cause exists to extend deadlines under Fed. R. Civ. P. Rule 16(b)); *Padilla v. Bechtel Constr. Co.,* 2007 WL 625927 at *6 (D. Ariz. Feb. 27, 2007); *Ciena Corp. v. Nortel Networks Inc.,* 233 F.R.D. 493, 495-96 (E.D. Tex. 2006); *see also Sigros v. Walt Disney World Co.,* 190 F.Supp.2d 165, 169 (D. Mass. 2002) (where the moving party identified outstanding issues that created a need for further discovery, and where there was no indication of a lack of diligence on the part of the moving party, an extension of the discovery deadline was appropriate).

**III.    THE LIMITED ADDITIONAL DISCOVERY IS RELEVANT TO A FAIR DETERMINATION OF DAMAGES.**

Where additional discovery will enable parties to obtain information that is relevant to the court's determination of key issues in a case, modification of a scheduling order is appropriate to ensure that a "fully informed and fair determination can be made and a just resolution reached." *Payless Shoesource Worldwide, Inc. v. Target Corp.,* 237 F.R.D. 666, 670 (D. Kan. 2006); *see also S.E.C. v. U.S. Envtl., Inc.,* 2002 WL 31357809 at *4 (S.D.N.Y. Oct. 17, 2002). An extension of the discovery period under such circumstances provides parties with "an opportunity to make a full and informed presentation of their case." *Payless Shoesource,* 237 F.R.D. at 672.

The discrete discovery requested by GolfSwitch relates directly to GolfSwitch's trade secret and patent infringement damages. GolfSwitch alleges that Mr. Loustalot, a Cypress shareholder who undoubtedly stands to gain significant return from this sale,

misappropriated GolfSwitch trade secrets and assisted the ramp-up of Cypress during its earliest days of existence. GolfSwitch also alleges that Cypress' tee-time reservation technology has infringed the GolfSwitch Patent since the patent's issuance in March 2006. Within a few short years of Cypress' unlawful conduct, Cypress, a single-technology company, sold for $40 million.

A.   **Trade Secret Misappropriation Damages.**

The details of the Comcast transaction likely involve information related to Cypress' revenue and profits, profits acquired through the unlawful misappropriation of GolfSwitch's trade secrets. These profits measure Cypress' unjust enrichment, and thus, are recoverable under trade secret law. *See* A.R.S. § 44-403(A) ("…a complainant is entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the *unjust enrichment* caused by the misappropriation…") (emphasis added); *see also Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1244-45 (8th Cir. 1994) (under state trade secret statute almost identical to Arizona's, damage award for trade secret misappropriation should "afford[] the plaintiff the greatest recovery").

In their Original Response, Cypress states that the court in the *Alcatel* case "rejected the argument that damages could be based upon the acquisition price of a defendant found liable for trade secret misappropriation." Original Response, Doc. #186 at p. 10. A more accurate statement of the holding conveys that the court rejected the argument that damages could be based *only* upon the acquisition price of a defendant found liable for trade secret misappropriation. *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239

1  F.Supp.2d 660, 671-72 (E.D. Tex. 2002). *Alcatel* is not directly analogous to the case at

2  hand, because GolfSwitch does not seek to base its entire damages theory on the sale

3  price of Cypress without explaining or providing additional evidence for its damages.

4  *Alcatel,* 239 F.Supp.2d at 671.

5      **B.**    **<u>Patent Infringement Damages.</u>**

6      In the patent infringement context, the choice of methodology for calculating

7  damages rests within the discretion of the district court. *SmithKline Diagnostics, Inc. v.*

8  *Helena Lab. Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991); *Ball Aerosol and Specialty*

9  *Container, Inc. v. Limited Brands, Inc.,* 514 F.Supp.2d 1051, 1058 (N.D. Ill. 2007) ("A

10  district court has discretion both in selecting the methodology for and in calculating a

11  damage award.") (*citing Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir.

12  1996)). Here, the requested discovery is relevant to several theories of damages for

13  patent infringement.

14      **1.**    **Under any theory of damage recovery available in a patent infringement action, this additional evidence is relevant and**

15      **discoverable.**

16      Under 35 U.S.C. § 284, a patent holder is entitled to "damages adequate to

17  compensate for the infringement, but in no event less than a reasonable royalty for the use

18  made of the invention by the infringer, together with interest and costs as fixed by the

19  court." This statutory language has been interpreted to allow for damage awards based

20  on three general theories: (1) lost profits; (2) established royalties; and/or (3) reasonable

21  royalties. In some cases, more than one damage theory is applied to fulfill the mandate of

22  35 U.S.C. § 284 that a damage award shall be "in no event less than a reasonable

royalty." For example, in cases where a party can show lost profits for only certain portions of its injury, or where a lost profits analysis would not adequately compensate a party, a reasonable royalty analysis and lost profits award can be used to make the party whole for the remainder of its damages. *See TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 898 (Fed. Cir. 1986); *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.,* 514 F.Supp.2d 1051, 1057 (N.D. Ill. 2007) (*citing State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577 (Fed. Cir. 1989)) (A court may divide damages between lost profits and a reasonable royalty in order to fully compensate a party for infringing activity.).

In the instant action, regardless of which damage theory is ultimately applied, the additional discovery is relevant. Cypress is a single-technology company. Its revenue, and thus, the value of the company, depends entirely on this technology – a technology that infringes the GolfSwitch Patent. Clearly, the purchase price for Comcast's acquisition of Cypress measures, in part, this value, and thus, is directly relevant to both the profit that Cypress made and GolfSwitch lost and the royalty a reasonable person would pay for use of the technology.

**2.      Subsequent events are relevant and should be considered in determining damages.**

A damage award utilizing a "reasonable royalty" is usually determined by the retroactive construction of a rate upon a "determination of what the parties would have agreed to in a hypothetical negotiation." *Wright v. United States,* 53 Fed. Cl. 466, 474 (Fed. Cl. 2002). The analysis should "not occur in a vacuum," but rather multiple factors

should be considered, including "any [] economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license." *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).

In its Original Response, Cypress cites case law stating that the hypothetical negotiation used to determine a reasonable royalty must be presumed to occur on or before the date of infringement. Cypress relies on this case law to imply, in turn, that evidence of subsequent events must be entirely irrelevant to the reasonably royalty analysis, and therefore, not discoverable. *See* Original Response, Doc. #186 at p. 5-7 & n.1. This argument, however, is contrary to case law and the policy considerations supporting damage determinations under 35 U.S.C. § 284.

Courts have expressly held that, in determining a reasonable royalty, "a court may [] consider events which occurred and facts which were known after the original infringement, even if they could not have been known or predicted by the hypothesized negotiators." *Wright v. United States,* 53 Fed. Cl. 466, 469-70 (Fed. Cl. 2002) (*citing Fromson v. W. Litho Plate and Supply Co.,* 853 F.2d 1568, 1575 (Fed. Cir. 1988)); *see also Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,* 378 F.Supp.2d 459, 464 (D. Del. 2005) (consideration of subsequent events in determining reasonable royalty allows hypothetical negotiations to "be flexibly applied as a device in the aid of justice."). By including subsequent events and other related benefits attributable to the infringing activity, courts can ensure that patent holders are adequately compensated for the infringing activity, as well as avoid a windfall for infringers. *See Wright v. United States,*

53 Fed. Cl. 466, 474 (Fed. Cl. 2002) (*citing Georgia-Pacific,* 318 F. Supp. at 1121) ("Willing negotiators would consider not only their relative bargaining positions, but also *any other economic factor* that a normally prudent businessperson would consider important.") (emphasis added).

Cypress relies on *Integra* to suggest information related to events that take place after the infringement began is irrelevant to damages. *See* Original Response, Doc. #186 at p. 6. Yet, Cypress fails to mention that the court in *Integra* overturned the jury's damage award, stating in part that the royalty failed to account for numerous factors, including the price Integra paid to acquire a third party – information that would alter the value of the hypothetical license. *Integra Lifesciences I Ltd. v. Merck KGaA*, 331 F.3d. 860, 871 (Fed. Cir. 2003), *rev'd on other grounds, Merck KGaA v. Integra Lifesciences I Ltd.,* 545 U.S. 193 (2005).

Cypress also relies on *Fromson* for the same proposition. Original Response, Doc. #186 at p. 7. Yet, Cypress has chosen to cite only a short passage from the case. Immediately prior to the section quoted by Cypress, the court in *Fromson* reviewed the Supreme Court's reasoning that consideration of subsequent events *is* proper in determining damages, because such consideration helps to "bring out and expose to light the elements of value that were there from the beginning." *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988) (citing *Sinclair Ref. Co. v. Jenkins Petroleum Co.,* 289 U.S. 689, 698-99 (1933)). The Federal Circuit in *Fromson* went on to state that "the methodology encompasses fantasy and flexibility; fantasy because it requires a court to imagine what warring parties would have agreed to as

willing negotiators; flexibility because it speaks of negotiations as of the time infringement began, *yet permits and often requires* a court to look to events and facts that occurred thereafter and could not have been known to or predicted by the hypothesized negotiators." *Id.* at 1575 (emphasis added).

In sum, to determine an adequate damage award for Cypress' infringement, evidence relating to Comcast's acquisition of Cypress is important information that the parties would likely have considered in a negotiation. The fact that the acquisition did not occur until after the date of infringement does not render this information irrelevant as Cypress would have this Court believe. Accordingly, Cypress should be compelled to produce the requested information.

**3.  Profits of the infringing party, including actual and anticipated profits attributable to the infringing product, are relevant to patent infringement damages.**

While the components of the sale price itself are relevant to damages, information behind the sales transaction is equally, if not more, relevant. Specifically, GolfSwitch seeks production of revenue and profit projections prepared, received or relied upon by Comcast in purchasing Cypress.

Evidence about the profits of an infringing party is relevant to a determination of damages under either a lost profits or reasonable royalty analysis. *See Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,* 219 F.R.D. 135, 142 (N.D. Iowa 2003). An infringing party's anticipated profits are similarly relevant to a determination of damages. *Smith Eng'g Co. v. Eisenmann Corp.,* 28 Fed. Appx. 958, 965 (Fed. Cir. 2002) (allowing calculation of damages based on "budgeted profits" of infringing party, even where

1  actual realized profits were lower than budgeted profits); *TWM Mfg. Co. v. Dura Corp.*,
2  789 F.2d 895, 899 (Fed. Cir. 1986) (calculating reasonable royalty rate of 30% based on
3  internal company memorandum projecting anticipated profits from infringing product);
4  *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*, 514 F.Supp.2d 1051,
5  1064 (N.D. Ill. 2007) (properly including evidence regarding the increasing popularity of
6  infringing product, as well as infringing party's reliance on product's performance in its
7  "business plan," as factors supporting increased rate for damage award.)

8  Any valuation leading to establishment of the purchase price for Cypress clearly
9  rested, in some part, on anticipated revenue and profit. Without question, such
10 information is relevant to a determination of a reasonable royalty or lost profits.

11 **IV.   CYPRESS' OBJECTIONS GO TO THE WEIGHT AND ADMISSIBILITY OF THE INFORMATION, NOT WHETHER THE INFORMATION IS DISCOVERABLE.**
12

13 The objections raised by Cypress in its Original Response go to the weight and
14 admissibility of the requested information. As the Court is well aware, however, parties
15 may obtain discovery on any matter relevant to a party's claim or defense, and that
16 information "need not be admissible at trial." Fed. R. Civ. P. 26(b).

17 The *Transclean* case illustrates this point precisely. There, the trial court rejected
18 the argument that evidence pertaining to the sale of the infringer's business was
19 irrelevant, denying the defendant's motion to exclude evidence and ruling that "[t]he
20 Patent Act specifically provides that a Court may receive expert testimony as an aid to
21 the determination of damages, or to establishing a royalty that would be reasonable as a
22 measure of damages, under the circumstances." *Transclean Corp. v. Bridgewood*

*Services, Inc.,* No. 97-2298 at *9 (D. Minn. April 13, 2000) (order denying motion to exclude expert evidence and testimony, attached as Exhibit E hereto). The trial court noted that "in certain circumstances, a patent holder may be entitled to recovery from the infringer's sale of its business because it included the sale of infringing products." *Id*. at 14. The trial court also reasoned that if the defendant wished to challenge the expert's methodology that was employed in formulating his opinions, "it is free to do so at Trial." *Id*. at 11. However, "because fashioning an adequate damages award depends on the unique economic circumstances of each case, a Trial Court has discretion to draw important subsidiary determinations in the proof of damages . . .," including consideration of information pertaining to the subsequent sale of the business. *Id*. at 13.

Information related to the purchase of Cypress is clearly relevant to GolfSwitch's damages analysis and falls within the scope of discovery permitted under Rule 26. The issue of whether the information should be admitted at trial and whether GolfSwitch's expert appropriately relies on this information – the issues raised by Cypress in their objection to this motion – are issues for a later date. For now, the only issue before the Court is whether Cypress should be compelled to produce the requested information, and GolfSwitch submits that good cause exists to reopen discovery and so compel Cypress.

**V.    THE LIMITED ADDITIONAL DISCOVERY WILL NOT RESULT IN ANY PREJUDICE OR DELAY.**

As the court in *Payless Shoesource* noted, when the requested extension of the discovery period will not likely impact the other deadlines in the case, "there is little risk of delay in the speedy determination of [the] matter or of prejudice to defendants as a

1  result of [the] decision to extend discovery." 237 F.R.D. at 672.  Here, there is little risk
2  that extension of fact discovery for purposes of this discrete issue will materially affect
3  the remaining deadlines in this case.
4       Experts just disclosed opening reports last Friday, September 12, 2008.
5  Responsive expert reports are not due until October 31, 2008, and expert depositions are
6  not required to be completed until ***December 12, 2008***.  *See* Case Management Order,
7  Doc. #56 at p. 4-5.  If the Court grants GolfSwitch's Renewed Motion, GolfSwitch's
8  damages expert should be permitted to supplement his opening report with this new
9  information.  Given the discrete issues impacted by the information, GolfSwitch
10 anticipates that its expert could produce a supplemental opening report within ten days of
11 receipt of the information.  Moreover, while GolfSwitch anticipates the requested
12 information will provide support for its damage analysis, it does not believe its
13 supplemental report will substantially alter or add to the original report.
14      While Cypress may claim that the deadline for rebuttal reports will have to be
15 extended to allow its expert to consider and respond to GolfSwitch's supplemental report,
16 GolfSwitch believes any extension would need to be only by a few days.  More
17 importantly, given that the deadline for expert depositions is three months out, this
18 deadline would not need to be changed.  There will be plenty of time to take expert
19 depositions before the scheduled deadline.  Therefore, no additional deadlines in the case
20 would need to be extended.  Accordingly, an extension of the period for fact discovery
21 here presents "little risk of delay" for the remainder of this matter, and thus there is no
22 prejudice to Cypress by granting this motion.

## VI.     CONCLUSION.

Because Comcast's purchase of Cypress occurred after the deadline for fact discovery, it was impossible for GolfSwitch to request information regarding the purchase under the deadline set in the scheduling order.  Thus, good cause exists to amend the deadline and compel Cypress to produce very limited information on the purchase, information that is sharply relevant to GolfSwitch's damages.

Thus, GolfSwitch respectfully requests the Court reopen discovery for the limited purpose of ordering Cypress to produce three discrete categories of documents:  (1) the purchase agreement (with attachments), (2) business plans and analysis, market analysis and competitive analysis performed by Comcast in connection with the purchase, and (3) projections received or prepared by Comcast in connection with the purchase.  GolfSwitch further requests that the Court allow its damages expert to supplement his opening report based on this new information.  Finally, to ensure the remaining case management deadlines are not affected in this case, GolfSwitch requests expedited briefing and ruling on this matter.

RESPECTFULLY SUBMITTED this 16th day of September, 2008.

                              **GALLAGHER & KENNEDY, P.A.**

                              By: s/ ***Brian W. LaCorte*** _____
                                  Brian W. LaCorte
                                  Donna H. Catalfio
                                  2575 East Camelback Road
                                  Phoenix, Arizona 85016-9225
                                  Attorneys for Plaintiffs/Counter-defendants
                                  GolfSwitch, Inc. and Spectrum Golf, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2008, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System for filing, and transmittal of a Notice of Electronic Filing to all party CM/ECF registrants

Johnathan E. Mansfield *(Admitted Pro Hac Vice)*  jmansfield@schwabe.com
Yvonne E. Schindler *(Admitted Pro Hac Vice)*   yschindler@schwabe.com
**SCHWABE WILLIAMSON & WYATT, P.C.**
PacWest Center 2
1211 SW 5th Avenue, Suite 1600-1900
Portland, Oregon 97204
*Attorneys for Defendants/Counter-claimants Incuborn Solutions, Inc., Golfnow, Inc. and Michael Loustalot*

Brett L. Dunkelman  bdunkelman@omlaw.com
**OSBORN MALEDON, P.A.**
2929 N. Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
*Attorneys for Defendants/Counter-claimants Incuborn Solutions, Inc., Golfnow, Inc. and Michael Loustalot*

Michael J. LaVelle    mjl@lavelle-lavelle.com
Matthew K. LaVelle    mkl@lavelle-lavelle.com
**LAVELLE & LAVELLE, PLC**
2525 East Camelback Road, Suite 888
Phoenix, AZ 85016
*Attorneys for Defendants/Counter-claimants TeeConnect, LLC, Open Course Solutions, LLC, Heritage Golf Group, LLC, and Heritage Golf Group, Inc.*

s/ Jeanette Burkey