Brett L. Dunkelman, No. 006740
OSBORN MALEDON, P.A.
2929 N. Central Ave., 21st Floor
Phoenix, AZ  85012-2793
(602) 640-9000
bdunkelman@omlaw.com

Johnathan E. Mansfield, admitted *pro hac vice*
William D. Fisher, admitted *pro hac vice*
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW Fifth Avenue, Suites 1600-1900
Portland, Oregon  97204-3795
(503) 222-9981
jmansfield@schwabe.com
wfisher@schwabe.com

Attorneys for Defendants Incuborn Solutions, Inc., Golfnow, Inc.
     and Michael Loustalot

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Golfswitch, Inc., et al., <br>     Plaintiff, <br> v. <br> Incuborn Solutions, Inc., et al., <br>     Defendants. | CV06-1119-PHX-NVW <br> CV06-1406-PHX-NVW <br><br> **CYPRESS GOLF SOLUTIONS' AND LOUSTALOT'S RESPONSE TO PLAINTIFFS' RENEWED MOTION TO RE-OPEN FACT DISCOVERY** |
| Golfswitch, Inc., <br>     Plaintiff/Counter-defendant, <br> v. <br> Tee Connect, LLC <br>     Defendant/Counter-claimant. | |

      Incuborn Solutions, Inc. and GolfNow, Inc. d/b/a Cypress Golf Solutions (collectively "Cypress") and Michael Loustalot ("Loustalot") oppose re-opening fact discovery to enable Plaintiffs to obtain documents from Cypress and non-party Comcast Corp. relating to Comcast's acquisition of Cypress' stock on April 1, 2008, more than two months after the close of fact discovery.

      There is no basis to require Cypress and/or non-party Comcast to produce these transaction related documents in any event, let alone to re-open fact discovery to do

so. The courts which have considered the issue have uniformly held that information relating to the acquisition of the defendant's stock may not be used to calculate damages either in a patent case or in a trade secret case. *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1375-76 (Fed. Cir. 2002) (patent infringement claim); *Minco, Inc. v. Combustion Eng'r, Inc.*, 95 F.3d 1109, 1120-21 (Fed. Cir. 1996) (same); *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp.2d 660, 671-72 (E.D. Tex. 2002) (trade secrets misappropriation claim). Simply put, the Court should not re-open fact discovery to require Cypress and non-party Comcast to produce substantial quantities of documents that cannot be used for any purpose in this litigation.

Cypress, however, agrees that it is typical in patent cases for the parties to exchange ordinary-course financial documents and information (e.g., financial statements, tax returns, and tee time transaction volume data) created after the close of discovery. Such supplemental discovery is commonly exchanged, because the damages period typically includes the time period between the close of fact discovery and trial. As a result, the production of financial documents created prior to the close of fact discovery is supplemented by the production of later created financial documents up through a reasonable time period prior to trial. Such information is often used calculate damages in a patent case – i.e., in order to apply a reasonable royalty rate to the defendant's revenues and/or to assess whether and to what extent the plaintiff suffered any damages as a result of the defendant's conduct.

In its counsel's letter dated September 2, 2008 (attached as Exhibit D to Plaintiffs' Motion), Cypress proposed that the parties exchange such updated ordinary course financial information. Plaintiffs did not respond to Cypress' letter, let alone agree to exchange such documents. Instead, two weeks after receiving Cypress' letter, Plaintiffs sought leave to file their discovery motion. Plaintiffs' failure to respond to Cypress' letter, either orally or in writing, arguably demonstrates a failure to comply with the letter or spirit of Paragraph 6 of this Court's Case Management

Order and LRCiv 7.2(j).  In any event, if there is to be any fact discovery after the January 30 deadline, rather than permitting Plaintiffs to pry into Comcast's acquisition of Cypress, such supplemental discovery should instead consist of a mutual exchange of ordinary course financial information and documents, such as financial statements, tee time booking data, and the like.

**I.      Factual Background.**

During the litigation, Cypress has produced a substantial amount of financial documents (i.e., financial statements, tax returns, budgets, projections, and data as to the number of tee time transactions) covering the time period 2002 through the end of 2007.  Included among the documents Cypress produced were at least two sets of financial projections, created prior to the issuance of the GolfSwitch patent in March 2006, relating to Cypress' projected revenues, costs, and profits for the years 2006 through 2008.  Cypress also produced documents identifying its competitors and discussing the tee time reservation market.  Plaintiffs' damages expert relied upon these documents in formulating his opinion as to the amount of the reasonable royalty.  Cypress also supplemented an interrogatory response to provide tee time booking data up through July 31, 2008.  As noted above, Cypress has also offered to provide updated financial statements and booking data up through a reasonable time prior to trial.

By contrast, GolfSwitch has produced only a limited amount of financial information covering the time period 2002 through the middle of 2007 and no financial information relating to the time period after June 30, 2007.  Thus, GolfSwitch's production of financial information is incomplete even if measured as of the date of the close of fact discovery (January 30, 2008).

As noted above, it is customary for the parties in patent litigation to provide updated financial document discovery up through a reasonable period of time prior to trial so that expert witness testimony on damages can be based upon reasonably current information.  In its September 2 letter, Cypress proposed that the parties

exchange such updated information, up through a reasonable period of time prior to trial. Plaintiffs never responded to Cypress' letter. Instead, two weeks later, on September 16, Plaintiffs sought leave to file their motion to re-open fact discovery, four days after submitting their damages expert report (i.e., on September 12). Although Plaintiffs concede that their expert will need to amend or supplement his report if the Court grants their motion to re-open fact discovery,[1] they contend that Cypress' damages expert should somehow have no difficulty submitting his expert report when due on October 31, 2008.

## II. The Transaction-Related Discovery GolfSwitch Seeks Is Irrelevant To The Damages Issues.

GolfSwitch contends that the transaction-related documents are an appropriate subject of discovery in this case, even if the transaction occurred months after the close of fact discovery. According to Plaintiffs, the Comcast transaction may be used to measure damages for its patent infringement and trade secrets claims. GolfSwitch's arguments, however, have been rejected by every court that has considered them. GolfSwitch cites no case – and we have found none – that even remotely supports GolfSwitch's position.

### A. The Patent Infringement Claim.

Damages for patent infringement arise from the sale by the defendant of products which infringe the patent in suit. As a result, it is hardly surprising that the Federal Circuit has twice held that a patent owner may not assert damages theories based upon the price a third party pays to acquire the business of the accused infringer, particularly when the acquisition is consummated years after the alleged infringement had begun. *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1375-76 (Fed. Cir. 2002); *Minco, Inc. v. Combustion Eng'r, Inc.*, 95 F.3d 1109, 1120-

---

[1] Ironically, in his expert report, GolfSwitch's damages expert complains that he has not received the very financial information and documents that Cypress had offered in the September 2 letter to exchange with GolfSwitch.

21 (Fed. Cir. 1996).  As the Federal Circuit explained in *Transclean*, 290 F.3d at 1376, damages for patent infringement arise from the sale of infringing goods or services and the sale of a business is not the sale of infringing goods or services.  Simply put, Comcast's purchase of Cypress' stock on April 1, 2008 cannot be a basis a damages claim for alleged infringement of the GolfSwitch patent.

The Federal Circuit's decision *Transclean* is dispositive here.  There, Bridgetown, the accused infringer, was no longer in business, as it had sold the entirety of its business assets to a third party for an amount well in excess of its tangible net worth.  290 F.3d at 1368.  Bridgetown was found to have infringed Transclean's patent for its sales of infringing products prior to its going out of business.  In addition to seeking damages based upon Bridgetown's sales of infringing products, Transclean also sought a reasonable royalty measured on the proceeds of the sale of Bridgetown's business assets.  Since the proceeds arose from the sale of a business and not the sale of infringing products, the Federal Circuit, relying upon *Minco*, held that reasonable royalty damages as a matter of law could not be based upon the proceeds from the sale of the business.  *Id.* at 1375-76.

As a result, the sale of Cypress' stock to Comcast cannot form the basis of a patent damages theory.  The sale of Cypress' stock to Comcast is not the sale of an infringing product or service.  Neither reasonable royalties nor lost profits damages may be assessed based in whole or in part upon the sale of Cypress stock to Comcast.

Recognizing that the Federal Circuit's decisions *Transclean* and *Minco* are dispositive, GolfSwitch essentially ignores what the Federal Circuit had to say.  Instead, it tries to divert attention to the fact that, prior to ruling that the acquisition could not form the basis of a damages claim, the trial court in *Transclean* had allowed the plaintiff's damages expert to testify at trial about the transaction.  GolfSwitch ignores the fact, however, that both the trial court and the Federal Circuit ultimately held that, as a matter of law, the transaction could not form the basis of a damages theory.  In other words, both the Federal Circuit and the District Court ultimately

1  concluded that the transaction was not relevant to any viable damages issue and that
2  testimony concerning that transaction should never have been admitted at trial.
3       Contrary to how GolfSwitch would have it, *Integra Lifesciences I Ltd. v.
4  Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *rev'd on other grounds*, *Merck
5  KGaA v. Integra Lifesciences I Ltd.*, 545 U.S. 193 (2005), hardly supports
6  GolfSwitch's argument that the price at which the accused infringer's stock is
7  acquired can form the basis of a damages claim. What was at issue in *Integra* was
8  whether the $20 million price which Integra (the patent holder) paid to acquire the
9  company (Telios) whose many valuable assets included the patents in suit was
10 relevant in determining whether or not Integra's (i.e., the plaintiff's) claim that a $15
11 million up front royalty constituted a reasonable royalty. Not surprisingly, the Federal
12 Circuit expressed doubt that $15 million could be a reasonable royalty for infringing
13 Integra's patent given that Integra had purchased Telios in its entirety for only $20
14 million. *Integra,* therefore, did not involve the purchase of the accused infringer by a
15 third party, but instead the purchase by the plaintiff of the patents in suit and other
16 business assets. Thus, if GolfSwitch or Cypress wanted to use GolfSwitch's purchase
17 of the patent in suit, or of an entity owning the patent, as evidence to support or
18 oppose a proffered reasonable royalty amount, *Integra* would be relevant supporting
19 authority. But that is not what GolfSwitch is attempting to do here.
20      Simply put, it is hard to imagine how judicial efficiency would be advanced if
21 fact discovery were re-opened to allow additional fact discovery relating to a damages
22 theory that fails as a matter of law and that cannot be presented at trial. The Court
23 should not re-open discovery to permit discovery of documents, such as the stock
24 purchase agreement, that cannot be admitted into evidence at trial.
25      **B.    The Trade Secrets Claim.**
26      In the only decision we could find that directly addresses the issue, the court,
27 relying in part upon *Transclean*, rejected the argument that damages could be based
28 upon the acquisition price of a defendant found liable for trade secrets

6

misappropriation. *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp.2d 660, 671-72 (E.D. Tex. 2002). The Court also held that it would be improper in any event to rely upon the acquisition price of a transaction consummated in September 1999 to measure damages for a trade secrets misappropriation which occurred between mid-1998 and May 1999. To do so, the Court explained, would "violate[] the principle requiring the valuation of trade secrets being measured at the time of the alleged misappropriation." *Id.* at 670. The time gap in our case is far more pronounced – GolfSwitch contends that the trade secrets misappropriation occurred in Fall 2002, while the Comcast transaction was consummated in April 2008.

GolfSwitch's attempt at page 9 of its Motion to distinguish *Alcatel* makes no sense whatsoever. A damages theory that is improper standing alone cannot magically be transformed into a viable theory simply because the plaintiff proffers other damages theories which are colorable. Similarly, inadmissible evidence cannot be magically transformed into admissible evidence simply because the plaintiff proffers other evidence that is admissible.

In any event, according to the report of Plaintiffs' damage expert (David R. Perry), GolfSwitch is seeking damages for alleged trade secret misappropriation only under an unjust enrichment theory. According to Mr. Perry's unjust enrichment theory, Cypress must disgorge **100% of the revenues** Cypress and Mr. Loustalot's company received between October 1, 2002 and December 31, 2005.[2] As a result, Comcast's April 2008 acquisition of Cypress' stock is absolutely irrelevant to the unjust enrichment theory. Any revenues from the April 2008 transaction were received well after December 31, 2005.

Again, there is no good cause to re-open discovery relating to a damages

---

[2] GolfSwitch's patent damages theory is similarly aggressive. Mr. Perry believes that GolfSwitch should receive reasonable royalty damages in an amount equal to more than 50% of the revenues Cypress received, or is projected to receive, between March 21, 2006 (the date the patent issued) and June 30, 2009 (the projected date of trial).

7

theory that, as a matter of law, cannot be presented at trial, and to obtain transaction documents that may not be admitted as evidence.

### III. The Court Should Implement Cypress' Proposal For Discovery Of Updated Financial Information.

As noted above, Cypress has produced a substantial amount of financial documents covering the time period up to the discovery cut-off date and, with respect to booking information, well beyond. These documents included two sets of projections created prior to the discovery cut-off date. By contrast, GolfSwitch has produced a very limited amount of financial information (i.e., financial statements and tax returns) for the time period prior to June 30, 2007. Perhaps more importantly, GolfSwitch has not produced any financial information for the time period after June 30, 2007, even though it is seeking damages up through the date of the anticipated trial in mid-2009.

If there is to be any production of documents that relate to the period after the close of fact discovery, it should consist of the categories Cypress has proposed – Cypress's and GolfSwitch's financial statements, tax returns, and tee time booking data. Moreover, the parties should update this financial information at reasonable intervals until a reasonable period prior to trial. This is the information the parties will need to calculate the amount, if any, of damages for the time period after January 1, 2008 and through the time of trial.

GolfSwitch, however, provides no explanation as to why the parties should not provide to each other the sort of supplemental financial discovery typically exchanged in patent cases. It has provided no reason to reject Cypress' proposal that the parties exchange actual revenue, profit, and cost data up to a reasonable time before trial. Instead of actual data for this time period, GolfSwitch wants projections, analyses, and the like provided to, or prepared by, Comcast in connection with its April 2008 acquisition of Cypress' stock. Surely, GolfSwitch cannot really believe that

projections of revenues, profits, and costs for the time period after January 1, 2008 are an effective substitute for actual revenue, profit, and cost data for that same time period. Simply put, there can be no reasonable explanation for why any litigant would want projections, but not actual data, for the time period in question.

### IV. The Court Should Not Re-Open Fact Discovery To Require Comcast And Cypress To Produce Financial Projections And Market Analyses Prepared In Connection With The Comcast Transaction.

Cypress has already produced financial projections and documents, created prior to the close of fact discovery, discussing competitors and the market. The Court should not re-open discovery to require (a) Cypress to produce projections, created after the close of fact discovery, and provided to Comcast in connection with the transaction and (b) Comcast to produce projections, competitive analyses and business plans prepared after the close of fact discovery and in connection with Comcast's acquisition of Cypress' stock. Such documents are of little or no relevance to the damages issues and certainly do not justify re-opening fact discovery.

According to their damages expert's report, Plaintiffs seek damages for patent infringement solely on a "reasonable royalty" theory. A "reasonable royalty" is determined by postulating "a hypothetical negotiation between the patentee and the infringer when the infringement began." *Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *accord Wang Labs., Inc. v. Toshiba Corp.*, 993 F.3d 858, 870 (Fed. Cir. 1993) (same). When the accused products or services were being sold at the time the patent issued, the patent issuance date is the date of the hypothetical negotiation. *Wang*, 993 F.2d at 870.[3]

---

[3] In determining the amount of the reasonable royalty to which the parties would have agreed at the hypothetical negotiation, the courts often consider the comprehensive list of relevant factors set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd*, 446 F.2d 295 (2nd Cir. 1971). The price at which the accused infringer's business is sold or may be sold is not one of these factors.

In a number of cases, the Federal Circuit has emphasized that the reasonable royalty determination must relate to the time infringement began and not at a later date. When the defendant was selling the accused product or service on the date the patent issued, that date is the day the patent issued. It is not susceptible to an after-the-fact assessment. E.g., *Unisply*, 69 F.3d at 518; *Wang*, 993 F.3d at 870; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983) ("The key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began.")

The Federal Circuit has held that it is reversible error to make that assessment after the date infringement began, even where the trial court can posit logical reasons for doing so under the particular facts of the case. *Unisply*, 69 F.3d at 869-72; *Wang*, 993 F.2d at 869-70. For example, in making the reasonable royalty damages assessment in *Wang*, the trial court concluded that the hypothetical negotiations would have occurred in January 1990, the date the patentee first gave notice of infringement to the defendant, rather than April 1987, when the patent issued and infringement began. 993 F.2d at 869. The trial court chose January 1990 because the plaintiff would not have been entitled to any damages that accrued before then (i.e., because it was barred by its lack of notice under 35 U.S.C. § 287). *Id.* The trial court also reasoned that a royalty negotiation would be unlikely to occur before the patentee notified the defendant of alleged infringement. *Id.* The Federal Circuit held that selection of a date after infringement began was reversible error, regardless of the logic of doing so under the peculiar facts of that case:

> It is not illogical to hypothesize a negotiation at the time of notice. After all, an accused infringer may not know of the patents until notice is given. Nonetheless, this case is governed by *Fromson*, in which hypothetical negotiations were determined to have occurred when the infringement began, which was the date the patent issued, even though, under 35 U.S.C. § 286, the infringer was only liable for damages for the six years prior to the filing of the infringement action. In this case, infringing products were being sold on the date of issuance of the '605 patent. Therefore, under *Fromson*, the hypothetical royalty negotiations should have been considered to have occurred on the patent issuance date.

10

*Id.* at 870.

Similarly, in *Fromson v. Western Litho Plate and Supply, Co.*, 853 F.2d 1568, 1575-76 & n. 12 (Fed. Cir. 1988), the Federal Circuit ruled that the hypothetical negotiation must be deemed to have taken place on May 4, 1965, the date the patent issued, even though the patent owner did not file suit until March 11, 1982, the patent expired on May 4, 1982, and the patentee was not entitled to be awarded any damages prior to March 11, 1976.

Here, the hypothetical negotiation between Cypress and GolfSwitch would have taken place on or before March 21, 2006, the date the patent issued. It would certainly be appropriate for an expert to assume that, during those hypothetical negotiations, Cypress would have been aware of financial projections it had previously created and which relate to the time period after March 21, 2006. Cypress, of course, has produced such projections and Plaintiffs' damages expert has utilized those projections in formulating his opinions. Cypress, however, could not have been aware of, nor relied upon, projections that would not be created until two years later in connection with the Comcast acquisition. Nor could it have been aware at all of any market or competitive analyses and similar documents prepared by Comcast in connection with the transaction and not disclosed to Cypress. As a result, financial projections and analyses created in 2008, particularly when prepared by Comcast and never disclosed to Cypress, have little or no relevance in determining what Cypress may have agreed to during the 2006 hypothetical license negotiations.

To be sure, GolfSwitch can point to a decision or two which, because of the particular circumstances present, permitted discovery of projections or other documents created after the commencement of infringement, i.e., the date of the hypothetical negotiation. None of those cases, however, dealt with the situation here – a request to re-open fact discovery to obtain documents created after the close of

fact discovery, particularly where those were created by a third party and never disclosed to the accused infringer.

As the very cases Plaintiffs' cite demonstrate, the "good cause" test for re-opening fact discovery requires a greater showing than merely that the requested discovery might have some marginal relevance to a damages theory. Instead, there must be showing that the evidence is critical or at least highly relevant to a claim or defense. Nor is "good cause" demonstrated merely by showing that that requesting party could not have been able to obtain the documents by acting diligently prior to the close of fact discovery. Undoubtedly, after the close of fact discovery in any case, litigants create thousands of documents that are relevant and responsive to a previously propounded document request. No amount of diligence could ever enable a party to obtain, prior to the close of fact discovery, a document created after the close of fact discovery. Yet, this alone cannot justify re-opening discovery. Otherwise, fact discovery could never be effectively concluded.

The parties' need for actual revenue, cost, and profit data created after the close of fact discovery is certainly a bona fide reason to supplement discovery after the fact discovery cut-off date. The same cannot be said for projections and analyses created in 2008 in connection with the Comcast transaction, particularly those that Comcast prepared and never disclosed to Cypress.

**Conclusion**

There is no basis for GolfSwitch's request to re-open fact discovery in order to obtain inadmissible evidence relating to Comcast's acquisition of Cypress' stock. GolfSwitch's motion should be denied. If any supplemental fact discovery is to be permitted, it should involve the parties' exchange of updated financial information and tee-time booking data up through a reasonable period of time before trial  Unlike Plaintiffs' request, such supplementation would not disrupt the orderly and efficient conclusion of the expert discovery process.

DATED this 3rd day of October, 2008.

                              OSBORN MALEDON, P.A.

                              By:   s/Brett L. Dunkelman
                                    Brett L. Dunkelman
                                    2929 N. Central, 21st Fl.
                                    Phoenix, AZ  85012-2793

                                    Johnathan E. Mansfield
                                    William D. Fisher
                                    Schwabe, Williamson & Wyatt, P.C.
                                    PacWest Center
                                    1211 S.W. 5th Avenue, Suite 1900
                                    Portland, OR 97204

                                    Attorneys for Defendants Incuborn Solutions, Inc., and GolfNow, Inc. dba Cypress Golf Solutions and Michael Loustalot

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2008, I served the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                                By:  s/Susanne Wedemeyer

2279581